IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Nancy M.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>Frank Bisignano,<br>Commissioner of Social Security Administration,<br><br>Defendant. | C/A No.: 4:26-cv-366-DCN-TER<br><br><br><br>REPORT AND RECOMMENDATION |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

I. Relevant Background

A. Procedural History

On June 3, 2022, Plaintiff filed an application for DIB in which she alleged her disability began on September 1, 2017. Tr. at 210–11. Her application was denied initially and upon reconsideration. Tr. at 103–07, 109–12. On February 11, 2025, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Paul Elkin. Tr. at 44–79 (Hr'g Tr.). The ALJ issued an unfavorable decision on February 28, 2025, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 14–43. Subsequently, the Appeals Council denied Plaintiff's request

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on February 2, 2026. (ECF No. 1]).

B. Background

Plaintiff was born in 1974 and was 43 years old on her alleged disability onset date. (Tr. at 210). She has no past relevant work. (Tr. at 64). In her application, Plaintiff alleged disability due to high blood pressure, chronic left knee pain, chronic low back pain, and chronic right hip pain. (Tr. at 248).

The record reflects that Plaintiff injured her left knee and right hip when she fell in May 2013, received treatment that included examinations, medications, injections, physical therapy, and surgery after her fall, stopped working around September 1, 2017, underwent a left total knee arthroplasty ("TKA") in July 2020, and was considered morbidly obese throughout the relevant period. *See, e.g.*, Tr. at 736–58, 771, 874–86, 882–90, 896–907. Following the left TKA, Plaintiff reported lower back and bilateral knee pain, limited motion, muscle weakness, and use of a cane and walker. *See, e.g.*, Tr. at 362, 425, 779, 860, 865. An MRI of Plaintiff's lumbar spine showed mild to moderate facet joint hypertrophy at L4–5 and L5–S1 with mild disc degeneration at L5–S1. Tr. at 413–14. Post-operative x-rays of Plaintiff's left knee showed no complications, although x-rays of her right knee indicated osteoarthritis. Tr. at 358–59, 691–92. Plaintiff's providers noted positive and negative findings on physical exams. *See, e.g.*, Tr. at 361, 430, 437, 474, 780–82. She was referred to additional physical therapy, received sacroiliac joint injections to address low back pain, and was prescribed various medications through her date last insured of March 31, 2023. *See, e.g.*, Tr. at 426–27, 430–32, 463, 465, 471, 477–75, 785.

C. The ALJ's Decision

In the decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2023.
2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2017 through her date last insured of March 31, 2023 (20 CFR 404.1571 *et seq.*).
3. Through the date last insured, the claimant had the following severe impairments: lumbar spine disorders, degenerative joint disease of the bilateral knee and status post left total knee arthroplasty (TKA), and obesity (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand/walk four hours in an eight-hour workday. She can occasionally stoop, crouch, and balance (as defined by the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO)). The claimant can occasionally climb ramps and stairs. She cannot kneel, crawl, or climb ladders, ropes, and scaffolds. She can have no exposure to unprotected heights and dangerous machinery.
6. The claimant has no past relevant work (20 CFR 404.1565).
7. The claimant was born on March 29, 1974 and was 49 years old, which is defined as a younger individual age 18–49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age after the date last insured (20 CFR 404.1563).
8. The claimant has at least a high school education (20 CFR 404.1564).
9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).
10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).
11. The claimant was not under a disability as defined in the Social Security Act, at any time from September 1, 2017, the alleged onset date, through March 31, 2023, the date last insured (20 CFR 404.1520(g)).

(Tr. at 19–38).

## II. Discussion

Plaintiff argues the ALJ failed to provide an adequate explanation for his evaluation of her subjective complaints. Defendant maintains the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

### A. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.

performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is

---

20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B. Analysis

Plaintiff argues the ALJ placed undue emphasis on the objective evidence in evaluating her subjective allegations of pain and other symptoms; summarized positive and negative findings in the treatment record without explaining how that evidence supported the RFC he assessed, as opposed to her subjective allegations; erroneously found that the state agency consultants' concluded a hand-held assistive device was not necessary; referenced her daily activities as supporting her ability to perform work at the assessed RFC without explaining his conclusion; and ultimately failed to "build an accurate and logical bridge from the evidence to his conclusion." (ECF No. 8 at 14–18).

At step three, the ALJ is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11. Social Security Ruling 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.* (internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, objective medical evidence must document the presence of an underlying impairment that would reasonably be expected to cause subjective complaints as severe and persistent as those alleged. If the ALJ determines that the claimant's impairment could reasonably produce the symptoms she alleges, he then proceeds to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See* 20 C.F.R. § 404.1529; SSR16-3p at *4.

An ALJ "improperly increase[s]" the claimant's "burden of proof" where he requires the subjective description of symptoms to be verified by objective medical evidence. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). Thus, if an ALJ concludes a claimant has severe impairments that could reasonably cause her alleged symptoms, the ALJ cannot reject the functional limitations the claimant states simply because there are not enough clinical signs and laboratory findings to corroborate the allegations. *See Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 95–96 (4th Cir. 2020); *Oakes v. Kijakazi*, 70 F.4th 207, 216–17 (4th Cir. 2023).

However, a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [s]he suffers[.]" *Craig*, 76 F.3d at 595. If a claimant's statements about the intensity, persistence, and limiting effects of symptoms, are inconsistent with the objective medical evidence and other evidence, they are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, her statements directly to the Administration or to medical or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c).

The ALJ may choose to reject a claimant's testimony regarding her condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). The ALJ considers all the evidence in the record when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

Plaintiff argues the ALJ sought objective evidence of pain before crediting her subjective allegations, which is contrary to Fourth Circuit precedent. (ECF No. 8 at 14). The Commissioner maintains the ALJ did not improperly rely on objective medical evidence to reject Plaintiff's complaints and properly considered her subjective complaints in light of all available evidence, including her "ability to independently manage her self-care, such as shopping and making meals for herself; quantity and form of treatment, seeking only conservative treatment and overall positive response to treatment." (ECF No. 9 at 6) (citing Tr. at 17–38). In her response to the Commissioner's brief, Plaintiff recognizes that the regulations require the ALJ to consider "all of the available evidence," but maintains the ALJ committed a specific error recognized by the Fourth Circuit by explicitly stating that her limitations were not substantiated by objective evidence. (ECF No. 12 at 2) (citing Tr. at 23, 31).

The regulations recognize that objective medical evidence is needed to substantiate a claimant's statements, but direct that the ALJ not consider a claimant's statements about the intensity and persistence of pain or other symptoms or the effect of symptoms on the ability to work *solely* based on the objective medical evidence. 20 C.F.R. § 404.1529(c)(2) (emphasis added). The Fourth Circuit has found reversible error where ALJ's overemphasized a lack of

objective medical evidence to support claimants' subjective allegations to the exclusion of other evidence, particularly in cases involving impairments that do not easily lend themselves to examination of subjective symptoms, such as fibromyalgia and depression. *See Hultz v. Bisignano*, 162 F.4th 111 (4th Cir. 2025); *Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341 (2023); *Arakas*, 983 F.3d 83. In *Langston v. Commissioner of Social Security Administration*, No. 22-1257, 2023 WL 1519521, at *3 (4th Cir. 2023), the court found reversible error in an ALJ's evaluation of a claimant's allegations of disabling abdominal pain, explaining:

> Here, the ALJ reviewed Langston's hearing testimony and found that her assertions about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. In support, the ALJ noted that, despite Langston's complaints of nausea and stomach pain, her weight had actually increased. The ALJ also relied upon Langston's reports of her daily activities which included the ability to "tend to her personal hygiene, cook, wash dishes, dust, wash laundry, take care of her grandchildren, get her grandchildren to school, drive, take her medications independently, shop for groceries, handle her finances, read, visit with her family, and watch television, activities, which generally reveal functioning at a greater level than alleged." J.A. 26. The ALJ termed her daily activities as "representative of a fairly active lifestyle and . . . not indicative of a significant restriction of activities or constriction of interests." J.A. 26. In addition, the ALJ noted that doctors had not been able to find a physical reason for her abdominal pain, but that it might be caused by long-term opiate use and abdominal adhesions. J.A. 29. Regarding Langston's back pain, the ALJ concluded that, while some mechanical back pain was supported by the objective medical evidence, Langston's "rather extreme complaints" were not. J.A. 29. Finally, the ALJ gave a lengthy recitation of Langston's medical history, although the ALJ did not provide any analysis as to the conclusions to be drawn therefrom.
>
> Langston contends that the ALJ erred by disregarding her statements about her abdominal pain because the ALJ could not find an objective medical explanation for the intensity of her pain. We agree. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020) (finding that claimant is entitled to rely exclusively on subjective evidence to show intensity and extent of pain and fatigue); *Lewis*, 858 F.3d at 866 (requiring objective medical evidence to support claimant's evidence of pain intensity improperly increased claimant's burden of proof). Indeed, the ALJ mentioned the lack of an official diagnosis in the same paragraph in which he noted that the RFC was supported by the evidence of

> record. To be sure, the ALJ did not explicitly state that the lack of "cause for abdominal pain" was a primary reason to disregard Langston's complaints. However, the placement of this sentence implies that it was strongly related to the ALJ's consideration of Langston's functional capacity. That was error.

*Id.*

Here, after summarizing Plaintiff's testimony, the ALJ found that while her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." Tr. at 23. He further wrote:

> In terms of the claimant's alleged impairments with their accompanying symptoms, her statements concerning the intensity, persistence and limiting effect of these symptoms are not supported by the evidence of record as a whole. The residual functional capacity herein reasonably accommodates the claimant's limitations as substantiated by the objective findings in the record evidence.

*Id.*

The ALJ subsequently wrote:

> In any case centered on an individual's subjective complaints, the undersigned must evaluate the consistency of the claimant's subjective complaints and allegations with the overall evidence in the file. The claimant's allegations of disability are not consistent with the overall evidence. The primary reason is that the objective medical records do not establish conditions that produced disabling limitations.

Tr. at 31. He stated he had:

> considered factors other than the objective medical evidence alone, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* He then proceeded to discuss Plaintiff's daily activities, conclude that "the frequency and intensity of her symptoms as shown in the evidence do not support the need for greater limitations," state "the aggravating factors were considered and accommodated in the residual functional capacity," and find that "her use of medications does not suggest the presence of an impairment that is more limiting than found in this decision." Tr. at 31–32. He wrote: "Viewing all of the evidence together, the undersigned finds that the claimant's subjective allegations of disability cannot reasonably be accepted as consistent with the objective medical evidence and other evidence in this case record (as required by 20 CFR 404.1529 and 416.929)." Tr. at 32.

The ALJ's explanation, as set forth above, reflects significant emphasis on an absence of objective medical evidence to corroborate Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms, as he noted that the RFC assessment "accommodates the claimant's limitations as substantiated by the objective findings" and "[t]he primary reason [for rejecting Plaintiff's statements] is that the objective medical records do not establish conditions that produced disabling limitations." Tr. at 23, 31. While the ALJ explicitly stated that he had considered the specific factors set forth in SSR 16-3p and 20 C.F.R. § 404.1529(c) in evaluating Plaintiff's subjective statements, his stated emphasis on the objective medical records requires that the court determine whether the he merely listed those factors or meaningfully considered them.

Plaintiff asserts the ALJ's summary of the evidence supported her allegations, as opposed to the ALJ's conclusory statements, as it reflected a need for surgery, consistent complaints of pain, positive objective tests, and positive clinical findings of antalgic gait, edema, tenderness, limited range of motion, crepitus, and elevated body mass index. *Id.* She points to this court's decisions in *Montgomery v. Kijakazi*, No. 0:21-3074-JD, 2022 WL 17853557, at *5 (D.S.C. Oct.

26, 2022) and *Bonnie S.F v. Kijakazi*, No. 1:23-3688, 2023 WL 9197967 (D.S.C. Dec. 20, 2023), as recognizing error where an ALJ's summary of the evidence fails to support his conclusion and "could be construed in fact to support the Plaintiff's allegations." *Id.* at 14–15. The Commissioner argues the ALJ's RFC assessment captures Plaintiff's credibly established limitations and is supported by substantial evidence and a narrative discussion. (ECF No. 9 at 4). He emphasizes the ALJ's consideration of Dr. Presnal's September 2021 treatment note and maintains the ALJ "devoted nearly fifteen single-spaced pages to explain why the overall record supported the RFC finding, but, in turn, did not support greater restrictions." *Id.* at 5 (citing Tr. at 22–36), 8–9. He argues the ALJ incorporated Plaintiff's subjective complaints into the RFC assessment by limiting her to work at the light exertional level and standing and walking for four hours in an eight-hour workday. *Id.* at 7–8. Plaintiff maintains that the Commissioner and the ALJ ignored crucial evidence from Dr. Presnal's September 2021 treatment notes recommending she "do primarily clerical duties with limited walking and standing" and that such limitations would be permanent. *Id.* at 3. She notes that defense counsel does not refute that the ALJ's lengthy summary of her treatment supports her allegations. (ECF No. 12 at 6).

Both parties correctly point out that the ALJ leaned heavily on Dr. Presnal's September 27, 2021 note that "there was nothing on exam or x-rays to indicate why she was having lateral knee pain other than possibly pain caused by her back." After discussing this report, the ALJ concluded "[o]verall, the record documents the need for the limitations contained in the residual functional capacity, but does not demonstrate the need for any greater limitation." Tr. at 24. The ALJ appears to have committed an error like that committed by the ALJ in *Langston*, as he found that because Dr. Presnal ruled out the knee as the source of Plaintiff's pain, the objective evidence did not support her pain complaints. The ALJ cited the functional limitations Dr.

Presnal provided following the September 2021 visit, but he rejected them, noting the "opinion [was] vague and the explanation provided d[id] not provide adequate support or any information to specify the limitations intended." Tr. at 33–34. This conclusion is partially supported, as Dr. Presnal did not specify how long Plaintiff could sit, stand, walk, lift, or carry, but it is not so vague that the ALJ could not have appreciated that Dr. Presnal indicated Plaintiff had functional limitations that were greater than those the ALJ's included in his RFC assessment.

The ALJ subsequently stated that "the following medical synopsis is provided further demonstrating the lack of support for a finding of total disability or a finding of any limitations greater than those determined herein." *Id.* This might have been sufficient to redeem the ALJ's error in evaluating Dr. Presnal's treatment note and opinion if the ALJ had actually explained how the records failed to support Plaintiff's subjective allegations, but he did not. Instead, he summarized the record, noting positive and negative findings and declining to explain how any of the summarized evidence supported his conclusion as to Plaintiff's subjective allegations and the RFC assessment. *See* Tr. at 24–31. The Fourth Circuit has repeatedly found that "meaningful review is frustrated when an ALJ goes from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods*, 888 F.3d at 694); *see also Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359 (4th Cir. 2023); *Carr v. Kijakazi*, No: 20-2226, 2022 WL 301540 (4th Cir. 2022); *Kenedy v. Saul*, 781 F. App'x 184 (4th Cir. 2019).

Plaintiff contends that the ALJ's findings about her use of an assistive device were unreasonable considering the record and that he misinterpreted the state agency physicians' opinions, as they did not indicate whether an assistive device was necessary or unnecessary. (ECF No. 8 at 15). The Commissioner contends that even though her records did not indicate she required or was prescribed an assistive device, the ALJ considered her cane use and noted that

she could still perform the identified jobs if she required a cane. (ECF No. 9 at 8). He further maintains that the ALJ explained that there were no findings on exam or radiographic evaluation to support Plaintiff's assertion that she required a cane and that the state agency medical consultants did not include use of a cane in their RFC assessment. *Id.* at 8–10 (citing Tr. at 28–30, 32–33). He asserts that Plaintiff did not meet the burden of establishing that a cane was medically necessary and the ALJ provided a well-supported explanation to support his decision not to include use of a cane in the RFC assessment. *Id.* at 11. Plaintiff asserts that instead of addressing her argument that the ALJ erred in rejecting her use of a cane because he mistakenly found the state agency physicians opined that one was not medically necessary, the Commissioner instead pointed to her medical records and daily activities to argue that a handheld assistive device was not medically necessary. (ECF No. 12 at 2, 3).

The ALJ specifically noted: "The claimant reports the use of an assistive device, but the overall evidence does not support the necessity of such." Tr. at 23. In reaching this conclusion, he considered the state agency medical consultant's opinions to be "mostly persuasive," writing:

> The evidence was reviewed by Maliha Khan, M.D. on November 28, 2023 and Adrian Corlette, M.D. on March 4, 2024. They supported their findings with explanations containing citations from the evidence reviewed. They supported the limitation to light work with notation of chronic knee and back pain with facet degenerative disc disease of the lumbar spine, ongoing sacroiliitis, and morbid obesity. They indicated that despite the notations of the use of cane and walker that a handheld assistive device was not necessary to be included in the residual functional capacity limitations. They determined that the limitation to light work with standing and walking no more than four hours reasonably accommodates the objective findings shown in the evidence. They supported the limitations with documentation of her complaints of continuing knee pain and low back pain with notation of the left total knee arthroplasty in 2020, and continued complaints of pain along with complaints and treatment for back pain. The findings of the consultants are consistent with the overall evidence received at the hearing level including evidence received after the hearing. The evidence shows findings consistent with the notations provided in the explanations by the consultants. The preponderance of the evidence documents ongoing knee pain throughout the period under consideration with objective findings of reduced range of motion of

> the knee and findings of degenerative changes of the lumbar spine with findings of reduced range of motion and spasms affecting the back. There is evidence of pain management treatment for these condition. It is also noted that her treating provider who has treated her knee pain throughout the period under consider[ation], Dr. Presnal, indicated multiple times that there were no obvious findings with the left knee and he thought her pain might be originating in the lumbar spine with possible radiculopathy (Exhibits 1F/12; 17F/37-41). The overall findings considering her knee pain, back pain, and obesity are shown to be consistent with the limitation to a reduced range of light work with standing and walking no more than four hours along with additional postural and environmental limitations. The opinions of the consultants are largely persuasive except with regard to the claimant's postural and environmental limitations. The overall evidence is more consistent with no exposure to hazards and no kneeling or crawling to better accommodate her knee pain and combination of her conditions overall.

Tr. at 32–33.

The undersigned finds no error in the ALJ's consideration of the state agency medical consultants' opinions regarding cane use. Drs. Khan and Corlette explained:

> As such, the claimant's statements regarding the severity, persistence, and functionally limiting effects of symptoms are considered partially consistent as they are not fully supported by the totality of the evidence. However, the bulk of MER does support chronic knee/back pain despite surgery on L knee. MER indicates an antalgic gait, use of a cane/walker, facet DDD of L spine, ongoing Sacroiliitis, chronic pain management and morbid obesity. These justify the RFC chosen.

Tr. at 84, 92. Both found that Plaintiff had the RFC for occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds; standing and/or walking for a total of four hours; sitting for about six hours; never climbing ladders, ropes, and scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and avoiding concentrated exposure to hazards. Tr. at 82–83, 90–91. Thus, while the medical consultants recognized evidence of Plaintiff's use of a cane and walker in the record and did not reject the notion that she would require a handheld assistive device, they did not specifically include use of a handheld assistive device in the RFC assessment. As such, the ALJ did not err in interpreting

their opinions as "indicat[ing] that despite the notations of the use of cane and walker" it was not "necessary to include use of "a handheld assistive device" in the RFC assessment.

The ALJ is not required to account for an assistive device if Plaintiff has not demonstrated that the device is medically required. *Sanford v. Saul*, No. 5:18-cv-2886-KDW, 2020 WL 633743, at *9–11 (D.S.C. Feb. 11, 2020). For an ALJ to find that a handheld assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Although the record contains evidence of antalgic gait, use of a cane and walker, and conditions that could reasonably require their use, the Commissioner persuasively argues that Plaintiff has not shown that use of a cane is medically required. Nevertheless, the ALJ's finding that a cane was not medically necessary was not dispositive of Plaintiff's other subjective allegations regarding the intensity, persistence, and limiting effects of her pain and other symptoms.

Plaintiff maintains the ALJ discussed her daily activities, but failed to acknowledge that they showed problems and limitations with activities or to explain how her daily activities supported a finding that she could perform light work on a sustained, full-time basis. (ECF No. 8 at 16). The Commissioner notes the ALJ did not find Plaintiff could independently perform all daily activities without limitation, but, rather, considered the nature and extent of her daily activities among the factors in evaluating the consistency of her subjective complaints. (ECF No. 9 at 13). He asserts the ALJ specifically acknowledged the qualifying circumstances surrounding Plaintiff's activities and did not equate her activities to an ability to perform full-time work, but reasonably found that her ability to engage in a range of daily activities was inconsistent with the

extreme degree of limitation she alleged. *Id.* at 14. With respect to her daily activities, Plaintiff asserts that the ALJ merely set out her allegations and announced that her daily activities supported the RFC assessment without explaining how. (ECF No. 12 at 4–5).

The ALJ wrote the following with respect to Plaintiff's daily activities:

> A review of the record reflects no limitations in activities of daily living greater than those as reflected in the residual functional capacity as stated above. The claimant completed a report on September 23, 2023 describing her daily activities. It is noted that this report was completed six months after the date last insured. The claimant stated she could dress independently, but needed help getting in and out of the bathtub and sometimes needed help getting off the toilet. She stated she used a shower chair. She indicated she needed to sit to do her hair. She did not need reminders for personal care or medications. She could prepare her own meals, but she could not stand to prepare meals. She did laundry with help and breaks. She could drive and go out alone. She could shop in stores and by online and she could manage money. She stated she enjoyed reading, watching television, attending football games and going to amusement parks. She indicated she could no longer walk at games or amusement parks. She had no problems getting along with others. She reported walking was significantly limited and she could lift only five pounds. She had no problems paying attention or following instructions. She had no problems with change, but got frustrated when using her knee or back. She reported the use of cane, walker, and wheelchair that she obtained after surgery and used with extended walking or time out (Exhibit 5E).
>
> The claimant testified she used to love to go to football games, but she can no longer participate in this activity. She also stated she previously sang in the church choir, but she cannot do this any longer because it requires too much standing. She testified she has curtailed many of her activities due to her pain, including going to dinner with friends because it hurts to sit that long.

Tr. at 31–32.

The ALJ's evaluation of Plaintiff's daily activities suffers from two significant flaws. First, the ALJ concludes that Plaintiff's daily activities support the assessed RFC without explaining his conclusion. Second, even if we are to assume that the ALJ relied on the varied nature of Plaintiff's daily activities to reach that conclusion, he did not consider the extent to which Plaintiff could perform the activities she reported. The Fourth Circuit has emphasized that an "ALJ may not consider the *type* of activities a claimant can perform without also considering

the *extent* to which [the claimant] can perform them." *Oakes v. Kijakazi*, 70 F.4th 207, 216 (4th Cir. 2023) (emphasis in original) (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Although the ALJ set forth the limitations Plaintiff reported in performing her daily activities, he did not meaningfully consider them, as he did not indicate how someone who stated she could not stand long enough to shower, do her hair, prepare a meal, or sing in the church choir, could not walk long enough to reach her seat at a football game, could lift only five pounds, and whose sitting limitations prevented her from going out to meals with friends had the RFC to sit, stand, and walk in combination over the course of an eight-hour workday with up to four hours of standing and walking and to lift 10 pounds frequently and up to 20 pounds occasionally.

Plaintiff ultimately claims that the ALJ did not "build an accurate and logical bridge from the evidence to his conclusion" and that remand is warranted for resolution of this issue. *Id.* at 17–18. She argues the ALJ noted her complaints, summarized her treatment records, and concluded that the record supported his RFC assessment without explaining that conclusion. (ECF No. 12 at 6). The undersigned agrees, as the ALJ failed to explain how the medical evidence of record, Plaintiff's daily activities, and the other relevant evidence failed to support her subjective allegations. The ALJ stated he considered other factors in SSR 16-3p and 20 C.F.R. § 404.1529(c) and wrote the following:

> The location, duration, frequency, and intensity of the claimant's pain and other symptoms were also considered. The record documents complaints of pain and that the claimant has sought treatment for her symptoms. However, the frequency and intensity of her symptoms as shown in the evidence do not support the need for greater limitations. Further, the aggravating factors were considered and accommodated in the residual functional capacity. The claimant is limited to light work with additional limitation to standing and walking along with postural and environmental limitations in order to avoid exacerbation of her symptoms and to protect her from conditions that could pose a danger to the claimant.

> Lastly, the undersigned considered the medications reported by the claimant and the information in this regard contained in the record evidence. The claimant's use of medications does not suggest the presence of an impairment that is more limiting than found in this decision. There is no evidence of any significant side effects of medications.

Tr. at 32. However, these conclusions do not reflect any acknowledgement from the ALJ as to how he considered the location, duration, frequency, and intensity of Plaintiff's pain and other symptoms and why the actual location, duration, frequency, and intensity of her symptoms as reflected in the record was inconsistent with her allegations; how the limitations to light work with additional standing, walking, postural, and environmental limitations accommodated the aggravating factors; or how the Plaintiff's medications and treatment history failed to support her allegations of functional limitations due to pain.

ALJs are required to evaluate the consistency between a claimant's subjective allegations and the objective medical record, and an ALJ commits a reversible legal error by rejecting the claimant's descriptions of symptom intensity, persistence, or functional limitations solely because those symptoms are not fully substantiated by clinical or laboratory findings if a medically determinable impairment exists. To survive judicial review, the ALJ must look beyond the objective medical evidence and comprehensively analyze other indicators, such as the claimant's daily activities, treatment history, and medication effectiveness, while clearly articulating the specific evidence supporting the credibility determination. The ALJ has failed in this respect.

III. Conclusion and Recommendation

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a

judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed and that this matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

IT IS SO RECOMMENDED.

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 1, 2026
Columbia, South Carolina

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).